UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| RICHARD KOLLIN, JR., Administrator of ) | Case No.: 1:11 CV 2605 | |
| the Estate of Richard Kollin, Sr., ) | | |
| ) | | |
| Plaintiff ) | | |
| ) | | |
| v. ) | JUDGE SOLOMON OLIVER, JR. | |
| ) | | |
| CITY OF CLEVELAND, *et al.*, ) | | |
| ) | | |
| Defendants ) | <u>ORDER</u> | |

Currently pending before the court is Defendant City of Cleveland and Defendant Brian P. Carney's Motion for Summary Judgment.[1] (ECF No. 17). For the following reasons, Defendants' Motion is granted in part and denied in part.

**I. BACKGROUND**

On October 25, 2009, a few minutes after 8:00 p.m., Richard Kollin ("Mr. Kollin") suffered a stroke while driving home from work, crashing his car into a stopped taxicab. Around 8:15 pm, Sergeant Brian P. Carney of the Cleveland Police Department arrived at the scene and placed Mr. Kollin under arrest for driving under the influence of alcohol or drugs. Mr. Kollin was transported to central booking (the Central Prison Unit, or "CPU") at approximately 8:30 p.m. Once at CPU, Mr. Kollin's arrest was processed and his picture taken. At 9:15 p.m., Sergeant Carney attempted

---

[1] The instant Motion was also filed on behalf of Jamal Ansari, Officer Corley, Officer Sanders, Alcenia Small-Smith, James Smart, and Ranell C. Thompson. Plaintiff later moved to dismiss these Defendants. (ECF No. 29.) The Court granted Plaintiff's Motion on March 22, 2013, and the above-named individuals are no longer parties to this dispute. (Order, ECF No. 44.)

to give Mr. Kollin a breathalyzer test, but Mr. Kollin was unable to blow into the breathalyzer. At some point, Mr. Kollin was placed in a wheelchair. An ambulance was called at approximately 9:43 pm. Mr. Kollin was taken to Metro Health Medical Center where, on December 15, 2009, he died.

In his affidavit, Sergeant Carney avers that Mr. Kollin appeared to be intoxicated. (Carney Aff. ¶ 6, ECF No. 17-5.) "I smelled the odor of alcoholic beverages on him," Sergeant Carney avers. (*Id*. at ¶ 5.) Carney "also asked if [Mr. Kollin] needed EMS and he said no." (*Id.* at ¶ 5.) Carney states that he administered "at least two field sobriety tests," both of which Kollin failed. (*Id.* at ¶ 6.) Although Carney did observe "involuntary jerking in both eyes," Carney reported that Mr. Kollin was able to walk unassisted, sign his name, and answer questions. (*Id.*) Other officers at the scene also aver that Mr. Kollin seemed intoxicated but did not exhibit "any symptoms other than Mr. Kollin appearing impaired by alcohol or drugs." (Thompson Aff. ¶ 6, ECF No. 17-6; *see also* Small-Smith Aff. ¶ 8, ECF No. 17-7.) Similarly, the corrections officer who booked Mr. Kollin averred that she "had no idea that Mr. Kollin was having a stroke. He appeared to be intoxicated." (Corley Aff. ¶ 7, ECF No. 17-4.)

Sergeant Carney avers that he first thought Mr. Kollin might need medical assistance when Mr. Kollin was being booked. (Carney Dep. 76, ECF No. 30-3.) Mr. Kollin was unable to stand and could not answer the booking officer's questions. (*Id.* at 66-69.) In response, Sergeant Carney requested a wheelchair for Mr. Kollin, instructed a guard to called EMS, and then called EMS himself. (*Id.*)

Plaintiff presents a different chronology. According to Plaintiff, Sergeant Carney became aware that Mr. Kollin needed medical attention before Mr. Kollin was transported to CPU. The Referral of Prisoner for Hospital Service Form for Mr. Kollin shows "20:15" as the time it was filled

out. The form also lists "20:15" as the time of the arrest, and has "EMS @ approx 2143" written at the top. Furthermore, the EMS report notes that, 15 minutes after he was arrested, Mr. Kollin "started having worse slurred speech . . . and started staring to his right side . . . ." (EMS Run Report 3, ECF No. 31-9.) Plaintiff also challenges the veracity of Sergeant Carney's description of events. For example, Plaintiff notes that Officer Ranell Thompson, who was at the scene of the accident and drove Mr. Kollin to CPU, testified in a deposition that he did not smell alcohol on Mr. Kollin. (Thompson Dep. 26, ECF No. 30-6 (stating that "I didn't smell anything").) Further, Plaintiff cites the deposition testimony of Officer Alcenia Small, who, along with Officer Thompson, transported Mr. Kollin to CPU. Officer Small testified that she brought Mr. Kollin directly to the booking counter. (Small Dep. 24, ECF No. 30-5.) In contrast, Sergeant Carney testified that Mr. Kollin was given a breathalyzer test at CPU before he was booked. (Carney Aff. ¶ 8.)

Plaintiff also notes that Sergeant Carney testified in his deposition that he had not been trained to identify the symptoms of a stroke. (Carney Dep. 13.)

Plaintiff asserts the following claims: (1) violations of the Fourth, Eighth, and Fourteenth Amendments of the U.S. Constitution under 42 U.S.C. § 1983; (2) failure to train and supervise under *Monell v. Dep't of Soc. Servs. of New York*, 436 U.S. 658 (1978); (3) wrongful death under Ohio Rev. Code §§ 2125.01-2125.03; (4) survivorship; (5) negligent, willful, wanton, and reckless conduct; and (6) intentional infliction of emotional distress. The City of Cleveland and Sergeant Carney moved for summary judgment on the grounds that Sergeant Carney is protected from liability from Plaintiff's § 1983 claims by the doctrine of qualified immunity, the City of Cleveland and Sergeant Carney are statutorily immune to Plaintiff's state law claims, and that the City of Cleveland was entitled to judgment as a matter of law on Plaintiff's *Monell* claim.

## II. SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56(a) governs summary judgment motions and provides that:

> A party may move for summary judgment, identifying each claim or defense-or the part of each claim or defense-on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

A party asserting there is no genuine dispute as to any material fact or that a fact is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

In reviewing summary judgment motions, this court must view the evidence in a light most favorable to the non-moving party to determine whether a genuine dispute as to any material fact exists. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 153 (1970); *White v. Turfway Park Racing Ass'n, Inc.*, 909 F.2d 941, 943-44 (6th Cir. 1990). A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Determination of whether a factual dispute is "genuine" requires consideration of the applicable evidentiary standards. Thus, in most cases the court must decide "whether reasonable jurors could find by a preponderance of the evidence that the [non-moving party] is entitled to a verdict." *Id.* at 252. However, "[c]redibility judgments and weighing of the evidence are prohibited during the consideration of a motion for summary judgment." *Ahlers v. Scheibil*, 188 F.3d 365, 369 (6th Cir. 1999). The moving party has the burden of production to make a prima facie showing that it is

entitled to summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 331 (1986).

If the burden of persuasion at trial would be on the non-moving party, then the moving party can meet its burden of production by either: (1) submitting "affirmative evidence that negates an essential element of the nonmoving party's claim"; or (2) demonstrating "to the court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim." *Id.* However, "where the moving party has the burden—the plaintiff on a claim for relief or the defendant on an affirmative defense—his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir.1986) (quoting W. Schwarzer, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 487-88 (1984)). Thus, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

If the moving party meets its burden of production, then the non-moving party is under an affirmative duty to point out specific facts in the record which create a genuine issue of material fact. *Fulson v. City of Columbus*, 801 F. Supp. 1, 4 (S.D. Ohio 1992). The non-movant must show "more than a scintilla of evidence to overcome summary judgment"; it is not enough to show that there is slight doubt as to material facts. *Id.* The United States Supreme Court has explained that, "there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the [nonmoving party's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249–50 (citations omitted); *see also Celotex*, 477 U.S. at 322–23. Moreover, the court has no duty "to

search the entire record to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989) (citing *Frito-Lay, Inc. v. Willoughby*, 863 F.2d 1029, 1034 (D.C. Cir. 1988)).

### III. ANALYSIS

### A. Qualified Immunity

Plaintiff asserts a claim against Sergeant Carney in his individual capacity, under 42 U.S.C. § 1983, for acting with deliberate indifference to Plaintiff's need for treatment for his stroke. Defendants maintain that they are entitled to qualified immunity from Plaintiff's claims. Qualified immunity protects an official from liability if the official's conduct does not violate "clearly established" statutory or constitutional rights that a reasonable person would have known were in existence. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The "contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640(1987). This does not mean that "an official action is protected by qualified immunity unless the very action in question has previously been held unlawful." *Id.* (citing *Mitchell v. Forsyth*, 472 U.S. 511, 535 (1985)). Rather,"in the light of pre-existing law the unlawfulness must be apparent." *Anderson*, 483 U.S. at 640.

The plaintiff bears the ultimate burden of proof to show that the defendants are not entitled to qualified immunity. *Wegener v. City of Covington*, 933 F.2d 390, 392 (6th Cir.1991). A defendant bears the initial burden of putting forth facts that suggest that he was acting within the scope of his discretionary authority. *Rich v. City of Mayfield Heights*, 955 F.2d 1092, 1095 (6th Cir.1992). If a defendant puts forth such facts, "the burden shifts to the plaintiff to establish that the defendants' conduct violated a right so clearly established that any official in defendants' positions would have

clearly understood that they were under an affirmative duty to refrain from such conduct." *Id.*

The law regarding deliberate indifference to an arrestee's medical needs is clearly established. *See, e.g., Estate of Carter v. City of Detroit*, 408 F.3d 305, 311 (6th Cir. 2005). Under § 1982, a cause of action for deliberate indifference to an individual's medical needs has two parts, objective and subjective. *Id*. The objective component requires that a plaintiff must show "the existence of a 'sufficiently serious' medical need." *Id.* (quoting *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 895 (6th Cir. 2004)). The subjective component requires the plaintiff to demonstrate that an individual defendant "possessed a sufficiently culpable state of mind." *Id.* As the Supreme Court stated in *Farmer v. Brennan*, "[t]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw that inference." 511 U.S. 825, 837 (1994).

There is no dispute that Plaintiff has satisfied the objective component of the inquiry – a life-threatening stroke qualifies as a sufficiently serious medical need. However, Defendant Carney argues that Plaintiff cannot meet the requirements of the subjective component; according to Defendants, "[t]here is absolutely no evidence to suggest that Sergeant Carney did in fact draw the inference [that Plaintiff was suffering from a stroke] and then disregarded the risk." (Defs.' Support Br.12, ECF No. 17.) In response, Plaintiff argues that the evidence tends to suggest that Sergeant Carney was aware that Plaintiff needed medical assistance soon after he arrived at the scene of the accident, but nonetheless took Plaintiff to CPU for booking rather than call for an ambulance.

Defendants' assertion that there is "absolutely no evidence" that suggests Defendant Carney was aware of and disregarded Plaintiff's need for immediate medical care is incorrect. As Plaintiff notes, the Referral of Prisoner for Hospital Service Form shows "20:15" as the time it was filled out.

The form also lists "20:15" as the time of the arrest, and has "EMS @ approx 2143" written on it at the top. When viewed in a light most favorable to Plaintiff, the Referral of Prisoner for Hospital Service Form tends to suggest that Sergeant Carney (listed on the form by his badge number) noticed that Mr. Kollin needed medical assistance approximately an hour and a half before an ambulance was called. The form therefore tends to show that Sergeant Carney knew that a substantial risk of serious harm to Mr. Kollin existed. *See Farmer*, 511 U.S. at 837. Under such circumstances, the fact that Sergeant Carney waited an hour and a half to contact EMS could constitute deliberate indifference to Mr. Kollin's medical needs. Furthermore, Officer Small's testimony that she took Mr. Kollin directly to the booking desk conflicts with that of Sergeant Carney, who stated that he gave Mr. Kollin a breathalyzer test before taking him to the booking desk. This conflict raises questions of credibility to be resolved by the jury. *Alspaugh v. McConnell*, 643 F.3d 162, 168 (6th Cir. 2011).

Sergeant Carney is not entitled to qualified immunity because there is a genuine issue of material fact regarding the point at which he realized that Mr. Kollin needed urgent medical assistance. *See Estate of Carter*, 408 F.3d at 313. Viewing the facts in a light favorable to Plaintiff, a reasonable officer would have understood that he was violating Plaintiff's constitutional rights by being deliberately indifferent to Plaintiff's medical needs.

### B. Employee Immunity Under Ohio Law

Under Ohio law, Sergeant Carney is immune from suit unless his "acts or omissions were with malicious purpose, in bad fath, or in a wanton or reckless manner." Ohio Rev. Code § 2744.03(A)(6)(b). The Ohio Supreme Court defines "reckless conduct" as "characterized by the conscious disregard of or indifference to a known or obvious risk of harm to another that is

unreasonable under the circumstances and is substantially greater than negligent conduct." *Anderson v. Massillon*, ___ N.E.2d ____, 2012-Ohio-5711 ¶ 34 (Ohio 2012) (citing *Thompson v. McNeill*, 559 N.E.2d 705, 708 (Ohio 1990)). "The question of whether a person has acted recklessly is almost always a question for the jury." *Sabo v. City of Mentor*, 657 F.3d 332, 337 (6th Cir. 2011) (quoting *Burlingame v. Estate of Burlingame*, 2011-Ohio-1325 ¶ 49 (5th Dist. Ohio Ct. App. 2011)).

Here, "the resolution of the recklessness issue is heavily dependent on the same disputed material facts" that preclude summary judgment on Plaintiff's § 1983 claim against Sergeant Carney. *Sabo*, 657 F.3d at 337. A reasonable jury could determine that Sergeant Carney's conduct was reckless if, as the Referral of Prisoner for Hospital Service form tends to suggest, he did in fact wait to call EMS over an hour and half after he became aware that Mr. Kollin needed medical assistance. Summary judgment is therefore inappropriate regarding Plaintiff's state-law claims against Sergeant Carney.

### C. Failure to Train or Supervise Under § 1983

Defendant City of Cleveland argues that it is entitled to summary judgment on Plaintiff's § 1983 claim because Plaintiff has failed to set forth any allegations that a policy, custom, or practice resulted in a violation of his rights. Plaintiff asserts that the city is liable because Officer Carney was not trained to tell the difference between the symptoms of stroke and those of alcohol intoxication.

To prevail on a claim against a municipality under § 1983, a plaintiff must establish both: (1) the deprivation of a constitutional right; and (2) the city's responsibility for that violation. *See Howard v. City of Girard, Ohio*, 346 F. App'x 49, 51 (6th Cir.2010) (citing *Ellis ex rel. Pendergrass v. Cleveland Mun. Sch. Dist.*, 455 F.3d 690, 700 (6th Cir.2006)). A municipality cannot be held liable under the theory of *respondeat superior*. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691

(1978). Instead, a plaintiff suing a municipality must identify an unconstitutional policy or custom in order to prevail on a § 1983 claim. *See id.* at 694. A policy of failure to adequately train a municipal employee, such as a police officer, may "serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton v. Harris*, 489 U.S. 378, 388 (1989). To establish liability, "the plaintiff must prove . . . that the training program at issue is inadequate to the tasks that officers must perform; that the inadequacy is the result of the city's deliberate indifference; and that the inadequacy is 'closely related to' or 'actually caused' the plaintiff's injury." *Russo v. City of Cincinnati*, 953 F.3d 1036, 1046 (6th Cir.1992) (citing *Hill v. McIntyre*, 884 F.2d 271, 275 (6th Cir.1989)). Deliberate indifference can be established by showing the "foreseeable consequences that could result from a lack" of training or by showing that the municipality "fail[ed] to act in response to response to repeated complaints of constitutional violations by its officers." *Brown v. Shaner*, 172 F.3d 927, 931 (6th Cir. 1999).

Plaintiff has not made any showing of deliberate indifference on the part of the City of Cleveland. Plaintiff has not provided any evidence of repeated complaints that Cleveland Police Officers failed to detect that an arrestee or pre-trial detainee was suffering from a stroke. Futhermore, Plaintiff has also failed to provide any evidence that the Police Department's allegedly inadequate training program could foreseeably result in the death or severe injury of stroke victims that the Department's officers might encounter. The Supreme Court has made clear that most failure-to-train claims require the plaintiff to "to prove a pattern of similar violations." *Connick v. Thompson*, 131 S.Ct. 1350, 1366 (2011). Plaintiff has not provided any such evidence. In the "narrow range" of cases that can prevail without evidence of a pattern of prior violations, the plaintiff must show that the consequence of failing to train "was *so* predictable that [it] amounted

-10-

to *conscious disregard* for" the plaintiff's rights. *Id.* at 1365 (emphasis in original). Such evidence usually comes in the form of an expert report or relevant lay testimony; Plaintiff has provided neither. *See Thomas v. City of Chattanooga*, 398 F.3d 426, 432-433 (6th Cir. 2005); *Irvin v. City of Shaker Heights*, 809 F.Supp.2d 719, 741 (N.D. Ohio 2011) (discussing types of evidence necessary to make out a failure to train claim). Plaintiff's failure-to-train claim cannot prevail without such facts. The court grants summary judgment for the city on Plaintiff's *Monell* claim.

### D. State Law Immunity for the City of Cleveland

Defendants correctly argue that Ohio's governmental immunity statute provides the City of Cleveland with a complete defense to Plaintiff's state law tort claims of failure to train; wrongful death; negligent, willful, wanton, and reckless conduct, and intentional infliction of emotional distress. Police services are a governmental function, Ohio Rev. Code § 2744.01(C)(2)(a), and, absent a express provision to the contrary, Ohio Rev. Code § 2744.2(B), political subdivisions are generally immune from liability for injuries arising from a governmental function. Ohio Rev. Code § 2744.02(A). Defendants have argued that no provision of the Ohio Revised Code impose liability on the city for any of Plaintiff's state law claims, and Plaintiff points to none. Consequently, the court grants summary judgment for the City of Cleveland on all of Defendant's state law claims.

### IV. CONCLUSION

The court grants in part and denies in party Defendants' Motion for Summary Judgment. (ECF No. 17.) The court grants summary judgment for the City of Cleveland on Plaintiff's state law claims and *Monell* claim. The court denies summary judgment on all other claims. A final pretrial conference will be held in the within case on April 29, 2013, at 10:00 a.m. Trial shall commence on July 15, 2013, at 9:00 a.m. A separate trial order shall issue.

IT IS SO ORDERED.

/S/ SOLOMON OLIVER, JR.
CHIEF JUDGE
UNITED STATES DISTRICT COURT

March 28, 2013